UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RENE HERRERA WILSON, | ) | Civil No. 11-CV-2296 LAB(RBB) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **GRANTING IN PART AND DENYING** |
| v. | ) | **IN PART DEFENDANTS KELLY AND** |
| | ) | **DIERDORFF'S MOTION FOR SUMMARY** |
| KELLY, POLICE OFFICER ID #6540; | ) | **JUDGMENT [ECF NO. 28] AND** |
| DIERDORFF, POLICE OFFICER | ) | **ORDER DISMISSING DEFENDANTS** |
| ID#5442, | ) | **SAN DIEGO POLICE DEPARTMENT** |
| | ) | **AND CITY OF SAN DIEGO UNDER** |
| Defendants. | ) | **FEDERAL RULE OF CIVIL** |
| | ) | **PROCEDURE 4(m)** |

Plaintiff Rene Herrera Wilson, proceeding pro se and in forma pauperis, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 against San Diego Police Officers Kelly and Dierdorff, alleging that Defendants used excessive force during his arrest and refused to provide him with medical attention.  (Complaint 2-5, ECF No. 1.)  Defendants Kelly and Dierdorff subsequently filed a Motion for Summary Judgment ("Motion") [ECF No. 28].  Plaintiff's opposition to the Motion was titled "Motion Opposed [sic] Defendants['] Sum[m]ary Judgment" [ECF No. 36] and was filed nunc pro tunc to November 1, 2012.  Defendants subsequently filed their Reply Regarding Motion for Summary Judgment [ECF No. 38].

For the reasons stated below, the Court recommends that Defendants Kelly and Dierdorff's Motion for Summary Judgment on Wilson's excessive force claim be **GRANTED**.   The Court **DISMISSES** Defendants San Diego Police Department and the City of San Diego from this action pursuant to the Federal Rule of Civil Procedure 4(m).

## I.   PROCEDURAL HISTORY

On October 10, 2011, Plaintiff filed his Complaint alleging claims for excessive force and deliberate indifference to a serious medical need.  (Compl. 2-5, ECF No. 1.)  Wilson's Complaint arises out of Plaintiff's arrest on May 22, 2011,[1] and names San Diego Police Officers Kelly and Dierdorff as Defendants.  (Id. at 3.) Along with the Complaint, Wilson filed a Motion for Leave to Proceed In Forma Pauperis [ECF No. 2], which the Court granted on November 10, 2011 [ECF No. 3].  The Clerk of the Court issued a summons on the original Complaint and sent it to Plaintiff along with a blank U.S. Marshal Form 285 for each Defendant [ECF No. 4]. Wilson filled out the forms with the Defendants' information, and the U.S. Marshal served the original Complaint and summons on Defendants Kelly and Dierdorff on November 23, 2011 [ECF Nos. 6, 7].

On December 9, 2011, before Kelly and Dierdorff filed an answer, Plaintiff filed a First Amended Complaint, repeating his allegations and adding the San Diego Police Department and the City of San Diego as Defendants [ECF No. 8].  A new summons and IFP

---

[1]   At the time of the original Complaint, Plaintiff was incarcerated at the San Diego Central Jail in San Diego, California.  (See ECF No. 3, at 1.)  Plaintiff is currently incarcerated at the California Institute for Men in Chino, California.

package were prepared and mailed to Wilson [ECF No. 9].  On
December 20, 2011, the Court received a change of address form from
the Plaintiff [ECF No. 12].  On December 22, 2011, the IFP package
was returned as undeliverable [ECF No. 13].  On the same date, the
Clerk of the Court mailed the package to the new address listed on
the docket.  (Id.)  The package was sent to the address provided by
Plaintiff, and because it was not returned, it was presumably
delivered to Wilson.  See Narragansett Indian Tribe v. Warwick
Sewer Auth., 334 F.3d 161, 168 (1st Cir. 2003)(stating that
testimony that documents were properly mailed with return addresses
and not returned gives rise to presumption that documents were
received); Wallace v. Busch Entm't Corp., No. 09-cv-2785-L(RBB),
2013 WL 356859 at *2 (S.D. Cal. Jan. 28, 2013)(same).  To date, the
Plaintiff has not filed proof of service of the Amended Complaint
on any Defendant.  Defendants San Diego Police Department and the
City of San Diego have not been served and have not appeared in
this case.

     On December 19, 2011, Defendants Kelly and Dierdorff filed
their Answer to the original Complaint [ECF No. 10], and on
September 5, 2012, they filed a Motion for Summary Judgment [ECF
No. 28].  The Court issued a Notice to Pro Se Plaintiff pursuant to
Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and
Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988), directing
Wilson to file an opposition to the Motion for Summary Judgment by
October 1, 2012 [ECF No. 29].  He failed to timely oppose the
Motion.  The Court subsequently issued a second Klingele/Rand
notice [ECF No. 30] and sua sponte extended Wilson's deadline for
filing an opposition to October 8, 2012.  That Order did not reach

1  Plaintiff due to a change of address [ECF Nos. 31, 32], so the

2  Court issued a third Klingele/Rand notice, once again extending

3  Wilson's deadline to file a response in opposition to Defendants'

4  Motion for Summary Judgment.  (Order Issuing Third Klingele/Rand

5  Notice 3, ECF No. 33.)

6      Plaintiff's "Motion Opposed [sic] Defendants['] Sum[m]ary

7  Judgment" was filed nunc pro tunc to November 1, 2012 [ECF No. 36].

8  There, Plaintiff reiterated his allegations of being assaulted and

9  beaten by Defendants, and stated he had "proof and evidence,"

10 including eye witnesses and photographs, to oppose Defendants'

11 Motion for Summary Judgment.  He also sought an extension to file

12 an opposition.  (Mot. Opposed [sic] Defs.['] Summ. J. 1-2, ECF No.

13 36.)  The Court denied Wilson's request for extension as moot,

14 noting that his opposition was not due until November 26, 2012.

15 (Order Denying Pl.'s Mot. 2, ECF No. 37.]  That deadline has

16 passed, and Wilson has not filed any additional opposition to

17 Defendants' Motion.  The Court will construe Wilson's submission as

18 his opposition to Defendants' Motion for Summary Judgment.  See

19 Christ v. Deberry, No. 2:10-cv-1786 LKK KJN P, 2013 WL 310557 at *2

20 (E.D. Cal. Jan. 25, 2013) (construing all pro se plaintiff's

21 filings following defendants' motion for summary judgment as his

22 complete opposition to defendants' motion).  Defendants Kelly and

23 Dierdorff filed a Reply Regarding Motion for Summary Judgment [ECF

24 No. 38.]

25      Because the allegations related to Plaintiff's claims against

26 Kelly and Dierdorff are not materially different from the

27 allegations in his original Complaint, and because Defendants based

28 their motion on the original Complaint, the Court will refer to

4

1  Plaintiff's original Complaint in the discussion of facts.  <u>See</u>
2  <u>George v. Jones</u>, No. C 06-2800 CW (PR), 2008 WL 859439 at *2 n.2
3  (N.D. Cal. Mar. 28, 2008) (granting defendants' motion for summary
4  judgment and closing the file although defendants were not served
5  with the first amended complaint).

6                **II.   STATEMENT OF UNCONTROVERTED FACTS[2]**

7       On May 22, 2011, at approximately 11:00 p.m., Jessica Harris
8  was walking with her boyfriend, Michael Venturella, on 600 Park
9  Boulevard in San Diego, California.  (Defs.' Mot. Summ. J. Attach.
10 #4 Harris Decl. 1, ECF No. 28.)  As they approached Venturella's
11 car, they saw Plaintiff punching a parked van.  (<u>Id.</u>)  Fearing
12 Plaintiff's behavior, Harris crossed the street and observed Wilson
13 kick the grill on Venturella's car.  (<u>Id.</u>)  As Venturella
14 approached his car, Plaintiff ran up to him and exposed himself.
15 (<u>Id.</u> Attach. #5 Venturella Decl. 2.)  Venturella turned around and
16 attempted to run away, but Wilson chased him and struck him in the
17 back.  (<u>Id.</u>)  Venturella turned and faced Wilson, who pulled down
18 his pants, exposed himself again, and proceeded to walk away.
19 (<u>Id.</u>)  Harris called 911 and reported the incident to the police.
20 (<u>Id.</u> Attach. #4 Harris Decl. 2.)

21      Within minutes, San Diego Police Officers Kelly and Dierdorff
22 responded to a radio call to investigate a report of battery in
23 downtown San Diego at the intersection of Park Boulevard and G
24 Street.  (<u>Id.</u> Attach. #2 Kelly Decl. 2.)  The officers spotted
25 Plaintiff, who matched the description of the suspect from the
26 call, and asked him to stop.  (<u>Id.</u>)  When Plaintiff kept walking,

27

28 
_____

          [2]  These facts are taken from Defendants' Motion and its
supporting exhibits and declarations.

Officer Dierdorff approached Wilson from the back, while Kelly blocked his path from the front. (<u>Id.</u> Attach. #3 Dierdorff Decl. 2.) Dierdorff asked Wilson to place his hands behind his back, but Plaintiff refused. (<u>Id.</u>) Wilson resisted attempts to handcuff him, so Defendants took Wilson to the ground, face down, to cuff him. (<u>Id.</u>) Once on the ground, Plaintiff continued to resist and pull away, and Officer Dierdorff placed his chest on Wilson's back to keep him from rolling over. (<u>Id.</u>) Once handcuffed, Plaintiff continued to struggle by kicking his feet and arching his back. (<u>Id.</u> at 3.) Throughout the encounter, Wilson appeared disoriented, was yelling, and mumbled incoherently in Spanish. (<u>Id.</u> at 2; <u>id.</u> Attach. #2 Kelly Decl. 3.)

After handcuffing Wilson, Officer Kelly interviewed Harris and Venturella who remained at the scene and were able to observe Defendants' attempts to handcuff Plaintiff. (Defs.' Mot. Summ. J. Attach. #2 Kelly Decl. 3, ECF No. 28.) Both Harris and Venturella stated that neither Defendant battered Wilson in any way. (<u>Id.</u> Attach. #4, Harris Decl. 2; <u>id.</u> Attach. #5 Venturella Decl. 3.)

While taking Wilson into custody, Defendants noticed a slight abrasion on Plaintiff's right cheek, but concluded that no medical attention was needed. (Defs.' Mot. Summ. J. Attach. #3 Dierdorff Decl. 3, ECF No. 28.) Once at police headquarters, Officer Dierdorff took pictures of Wilson's face and body. (<u>Id.</u>) Defendants then transported Wilson to the county jail where he was evaluated by a nurse for injuries and admitted. (<u>Id.</u>) Plaintiff did not complain about pain or ask for medical assistance from Defendants at any time. (<u>Id.</u> at 4.)

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS

Federal Rule of Civil Procedure 56(a) provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Like the standard for a directed verdict, judgment must be entered for the moving party "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (citing Brady v. S. Ry. Co., 320 U.S. 476, 479-80 (1943)). "If reasonable minds could differ," judgment should not be entered in favor of the moving party. Id. at 250-51; see also Blankenhorn v. City of Orange, 485 F.3d 463, 470 (9th Cir. 2007).

The parties bear the same substantive burden of proof that would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Liberty Lobby, Inc., 477 U.S. at 252; see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex Corp., 477 U.S. at 322). The absence of a genuine issue of material fact on a single element of a claim is sufficient to warrant summary judgment on that claim. Celotex Corp., 477 U.S. at 322-23.

The moving party bears the initial burden of identifying the pleadings and evidence it "believes demonstrate the absence of a genuine issue of material fact." Id. at 323; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. Stanford, 323 F.3d 1178, 1182-83 (9th Cir. 2003).  The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. Celotex Corp., 477 U.S. at 324.  To successfully rebut a defendant's properly supported motion for summary judgment, the plaintiff "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff[']s[] favor, could convince a reasonable jury to find for the plaintiff[]." Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323; Liberty Lobby, 477 U.S. at 249).  Material issues are those that "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248; see also Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1039-40 (9th Cir. 2000); SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  More than a "metaphysical doubt" is required to establish a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In deciding whether any genuine issue of material fact remains for trial, courts must "view[] the evidence in the light most favorable to the nonmoving party . . . ." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001); see also Eastman Kodak Co. v. Image Technical Serv., Inc., 504 U.S. 451, 456 (1992) (stating that the nonmoving party's evidence is to be believed and all reasonable inferences drawn in the nonmoving party's favor).  "When opposing

parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  While the district court is not required to search the entire record for an issue of fact, the court may nevertheless exercise its discretion to consider materials in the record that are not specifically identified. <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>Forsberg v. Pacific N.W. Bell Tel. Co.</u>, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

When the nonmoving party is proceeding pro se, the court has a duty to consider "all of [the nonmovant's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the nonmovant] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." <u>Jones v. Blanas</u>, 393 F.3d 918, 922-23 (9th Cir. 2004) (citations omitted).  Although pro se documents are construed liberally, <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), a pro se plaintiff "may not rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue for trial." <u>Leer v. Murphy</u>, 844 F.2d 628, 631 (9th Cir. 1988).

A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. <u>Cristobal v. Siegel</u>, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994). A court may, nonetheless, "grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to

9

1    support the motion and do not on their face reveal a genuine issue

2    of material fact[.]" Williams v. Santa Cruz Cnty. Sheriff's Dep't,

3    234 F. App'x 522, 523 (9th Cir. 2007) (citing Henry v. Gill Indus.,

4    Inc., 983 F.2d 943, 950 (9th Cir. 1993)).

5                              **IV. DISCUSSION**

6    **A.   Defendants' Motion for Summary Judgment**

7          Plaintiff alleged that Defendants used excessive force during

8    his arrest, and they failed to take him to the hospital to treat

9    his injuries. (Compl. 2-5, ECF No. 1.) Defendants Kelly and

10   Dierdorff move for summary judgment on the excessive force claim,

11   arguing that they acted reasonably to effectuate Plaintiff's

12   arrest. (Defs.' Mot. Summary J. Attach. #1 Mem. P. & A. 4, ECF No.

13   28.) Defendants also contend they are entitled to qualified

14   immunity on the excessive force claim. (Id. at 7-8.)

15         "Qualified immunity shields government officials from civil

16   damages liability unless the official violated a statutory or

17   constitutional right that was clearly established at the time of

18   the challenged conduct." Reichle v. Howards, ___ U.S. ___, 132 S.

19   Ct. 2088, 2093 (2012). When considering a claim for qualified

20   immunity, courts engage in a two-part inquiry: Do the facts show

21   that the defendant violated a constitutional right, and was the

22   right clearly established at the time of the defendant's purported

23   misconduct? Delia v. City of Rialto, 621 F.3d 1069, 1074 (9th Cir.

24   2010) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). A

25   right is clearly established if the contours of the right are so

26   clear that a reasonable official would understand his conduct was

27   unlawful in the situation he confronted. Dunn v. Castro, 621 F.3d

28   1196, 1199-1200 (9th Cir. 2010). This standard ensures that

                                    10

government officials are on notice of the illegality of their
conduct before they are subjected to suit.  Hope v. Pelzer, 536
U.S. 730, 739 (2002).  "This is not to say that an official action
is protected by qualified immunity unless the very action in
question has previously been held unlawful . . . . " Id. (citations
omitted).

    "[L]ower courts have discretion to decide which of the two
prongs of qualified-immunity analysis to tackle first."  Ashcroft
v. al-Kidd, ___ U.S. ___, 131 S. Ct. 2074, 2080 (2011); see also
Pearson, 555 U.S. at 236.  "If the Officers' actions do not amount
to a constitutional violation, the violation was not clearly
established, or their actions reflected a reasonable mistake about
what the law requires, they are entitled to qualified immunity."
Brooks, 599 F.3d at 1022 (citing Blankenhorn, 485 F.3d at 471); see
James v. Rowlands, 606 F.3d 646, 651 (9th Cir. 2010) (quoting
Pearson, 555 U.S. at 232, 236).

    Courts should attempt to resolve this threshold immunity
question at the earliest possible stage in the litigation "before
expending 'scarce judicial resources' to resolve difficult and
novel questions of constitutional or statutory interpretation that
will 'have no effect on the outcome of the case.'"  al-Kidd, ___
U.S. ___, 131 S. Ct. at 2080 (quoting Pearson, 555 U.S. at 236-37);
see also Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting
that the purpose of resolving immunity issues early is so that
officials are not subjected to unnecessary discovery); Hunter v.
Bryant, 502 U.S. 224, 227 (1991).  "If no constitutional violation
is shown, the inquiry ends."  Cunningham v. City of Wenatchee, 345
F.3d 802, 810 (9th Cir. 2003).

Qualified immunity protects an officer who makes a decision that, even if constitutionally deficient, is based on a reasonable misapprehension of the law governing the circumstances he confronted.  <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004); <u>see also</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001) ("Qualified immunity operates . . . to protect officers from the sometimes 'hazy border between excessive and acceptable force[]' . . . .") (quoting <u>Priester v. Riviera Beach</u>, 208 F.3d 919, 926-27 (11th Cir. 2000)). The inquiry is whether the officer knew his conduct was unlawful, and "reasonableness is judged against the backdrop of the law at the time of the conduct."  <u>Brosseau</u>, 543 U.S. at 198.  If at the time, the law did not clearly establish that the conduct violated the Constitution, the officer should not be subject to liability. <u>Id.</u>  "The plaintiff bears the initial burden of proving that the right was clearly established."  <u>Sweaney v. Ada Cnty., Idaho</u>, 119 F.3d 1385, 1388 (9th Cir. 1997).

The constitutional claim Wilson raises involves principles enunciated in <u>Graham v. Connor</u>, 490 U.S. 386 (1989).  <u>See</u> <u>Brosseau</u>, 543 U.S. at 197.  In <u>Graham</u>, the United States Supreme Court held that where an excessive force claim arises "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen[,] [it] should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ."  <u>Graham</u>, 490 U.S. at 395.  Under this standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  <u>Id.</u> at 397.  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,'

violates the Fourth Amendment."   Id. at 396 (quoting Johnson v.
Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

Applying Graham, the Ninth Circuit uses a three-step analysis
to determine the reasonableness of nondeadly force used to effect a
seizure:

> First, we assess the gravity of the particular intrusion
> on Fourth Amendment interests by evaluating the type and
> amount of force inflicted.   Second, we assess the
> importance of the government interests at stake by
> evaluating:  (1) the severity of the crime at issue, (2)
> whether the suspect posed an immediate threat to the
> safety of the officers or others, and (3) whether the
> suspect was actively resisting arrest or attempting to
> evade arrest by flight.   Third, we balance the gravity of
> the intrusion on the individual against the government's
> need for that intrusion to determine whether it was
> constitutionally reasonable.

Miller v. Clark Cnty., 340 F.3d 959, 964 (9th Cir. 2003) (citations
omitted).

"Because [the excessive force inquiry] nearly always requires
a jury to sift through disputed factual contentions, and to draw
inferences therefrom, we have held on many occasions that summary
judgment or judgment as a matter of law in excessive force cases
should be granted sparingly." Santos v. Gates, 287 F.3d 846, 853
(9th Cir. 2002); accord Maxwell v. Cnty. of San Diego, ___ F.3d
___, 2013 WL 542756 at *8 (9th Cir. Feb. 14, 2013).  To defeat a
motion for summary judgment in a case alleging excessive force, the
plaintiff must provide evidence that establishes the existence of a
triable issue of fact.   See Washington v. Alton, No. C-00-2579 PJH,
2002 WL 1349504 at *3 (N.D. Cal. June 13, 2002).

In deciding a motion for summary judgment, the Court views the
evidence in light most favorable to the nonmoving party.   Rene v.
MGM Grand Hotel, Inc., 305 F.3d 1061, 1064 (9th Cir. 2002) (en

banc).  It should not, however, consider "mere allegation and
speculation" of the parties.  <u>Nelson v. Pima Cmty. Coll.</u>, 83 F.3d
1075, 1081-82 (9th Cir. 1996).

Here, Plaintiff alleged that he was stopped by Officers Kelly
and Dierdorff, accused of being under the influence, pushed to the
ground, handcuffed, placed in the police car, and taken to the
station.  (Compl. 3, ECF No. 1.)  Plaintiff maintains that he was
punched in the stomach and the right eye, and kicked while he was
on the ground.  (<u>Id.</u>)  Wilson claims his face and left wrist were
bleeding, and he asked to be taken to the hospital.  (<u>Id.</u>)  Because
Wilson is pro se, the Court must consider as evidence all of his
contentions that are based on personal knowledge, set forth facts
that would be admissible in evidence, and are signed under penalty
of perjury.  <u>Jones v. Blanas</u>, 393 F.3d at 923.  Neither Plaintiff's
Complaint nor First Amended Complaint is signed under penalty of
perjury, and therefore neither is a verified pleading sufficient to
serve as an opposing affidavit under Rule 56 of the Federal Rules
of Civil Procedure.  <u>See</u> Fed. R. Civ. P. 56 (c)(4).  Consequently,
the Court will not consider the facts contained in Wilson's
unverified pleadings.

Defendant officers presented evidence in the form of
declarations that they responded to a 911 call reporting a battery,
and after identifying Wilson as the suspect, they attempted to stop
him.  (Defs.' Mot. Summ. J. Attach. #2 Kelly Decl. 2, ECF No. 28.)
Defendants first tried to talk with him, but Wilson ignored their
requests to stop and kept walking.  (<u>Id.</u> Attach #3 Dierdorff Decl.
2.)  Plaintiff appeared to be intoxicated and was breathing
heavily, mumbling, and yelling.  (<u>Id.</u>)  The officers tried to block

his path and handcuff Wilson; he resisted, and a struggle ensued. (<u>Id.</u>)  Defendants took Wilson to the ground and attempted to handcuff him, but Plaintiff continued to resist.  (<u>Id.</u>)  Officer Dierdorff placed his chest on Wilson's back and grabbed Plaintiff's right wrist.  (<u>Id.</u>)  Wilson hid his left hand under his stomach, and Officer Kelly struggled to grip Wilson's left wrist.  (<u>Id.</u>) Eventually, Kelly was able to grab Wilson's left hand, and the officers handcuffed Plaintiff.  (<u>Id.</u>)  At no time during the encounter did the Defendants strike or hit Wilson.  (<u>Id.</u> at 4.) Defendants later noticed a small abrasion on Plaintiff's right cheek and concluded that Wilson obtained it during the struggle. (<u>Id.</u> at 3.)

The injury to Plaintiff's right cheek is consistent with Defendants' description of the struggle to handcuff Wilson. Plaintiff was face down on the ground when he twisted his body to free his left arm and hid his left hand under his stomach.  (<u>Id.</u> at 2.)  The scrape on his right cheek may have occurred while Wilson was on the pavement and resisting arrest.  In any event, the "core judicial inquiry" in an excessive use of force claim is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  <u>Wilkins v. Gaddy</u>, 559 U.S. 34, ___, 130 S. Ct. 1175, 1178-79 (2010) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992)).

Police officers are not required to use the least intrusive force possible; the question is "whether the force used was reasonable in light of all the relevant circumstances." <u>Forrester v. City of San Diego</u>, 25 F.3d 804, 806 (9th Cir. 1994) (quoting

1  Hammer v. Gross, 932 F.2d 842, 846 (9th Cir. 1991)).  In fact, an

2  officer's right to make an arrest necessarily includes the right to

3  use some degree of force.  Graham, 490 U.S. at 396; Cunningham v.

4  Gates, 229 F.3d 1271, 1290 (9th Cir. 2000); see also Cal. Penal

5  Code § 835a (West 2008) ("A peace officer who attempts to make an

6  arrest need not retreat or desist from his efforts by reason of the

7  resistance or threatened resistance of the person being

8  arrested.").

9      In his opposition, Wilson alleges he has "proof and evidence

10  like eye witnesses" and "four color pictures" to support his

11  excessive force claim.  (Mot. Opposed [sic] Defs.['] Summ. J. 1,

12  ECF No. 36.)  He has not, however, presented any declarations or

13  testimony to rebut Defendants' evidence that Plaintiff did not

14  comply with Dierdorff's request to stop and that Wilson resisted

15  when officers attempted to place him in handcuffs.  (See Defs.'

16  Mot. Summary J. Attach. #3 Dierdorff Decl. 2, ECF No. 28.)

17  Plaintiff's allegations of "assault and beating" by Defendants

18  Kelly and Dierdorff, without more, are insufficient to demonstrate

19  that the force used during Wilson's arrest was excessive.  (Mot.

20  Opposed [sic] Defs.['] Summ. J. 1, ECF No. 36.)  Wilson's

21  opposition is not signed under penalty of perjury and, therefore,

22  cannot be considered on summary judgment.  See Jones, 393 F.3d at

23  923.

24      Defendants used some force to apprehend Wilson when they took

25  him to the ground.  Still, under the circumstances, the officers

26  applied reasonable force necessary to subdue Wilson by pinning and

27  handcuffing him.  They did not deploy a taser or pepper spray, and

28  did not use batons or other weapons.  There is no evidence that

Defendants kicked, struck, or punched Plaintiff to make the arrest. Plaintiff did not suffer any serious physical injury as a result of the arrest.  Defendants have offered sufficient evidence that the use of force did not constitute a serious intrusion on Plaintiff's Fourth Amendment rights.  See, e.g., Brooks v. City of Seattle, 599 F.3d 1018, 1030-31 (9th Cir. 2010)(holding that the application of the taser three times against a pregnant woman during a traffic stop did not constitute excessive force). But cf. Davis v. City of Las Vegas, 478 F.3d 1048 (9th Cir. 2007) (holding that officer used excessive force when he swung a handcuffed plaintiff into a wall head-first multiple times, punched him in the face while he lay face-down on the ground, and broke his neck as a result).

In considering the government interest at stake here, the Court looks at the severity of crime, the threat presented by Wilson, and his attempts to resist arrest.  See Miller, 340 F.3d at 964.  The most important factor in determining reasonableness is whether the suspect posed an immediate threat to the safety of officers or others.  Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994).  In this case, Plaintiff was kicking cars, exposing himself, and hitting a victim.  Defendant officers responded to the scene of a reported battery and were met with resistance when they attempted to apprehend the suspect.  Under the circumstances, no genuine issue of material fact remains that Wilson was a threat to public safety and actively resisted when the officers attempted to arrest him.  Tatum v. City & Cnty. of San Francisco, 441 F.3d 1090, 1096-97 (9th Cir. 2006) (finding no excessive force where officer used a control hold on a suspect that was resisting arrest by trying to spin out of the officer's grasp); see also Scott v.

1  <u>Harris</u>, 550 U.S. 372, 384 (2007) (holding that when balancing

2  governmental interest in using force against individual's interest

3  in being free of excessive force, it is appropriate to consider the

4  "relative culpability" of the parties, including which party was

5  responsible for escalating the situation).

6      Viewing all facts in favor of Wilson, Plaintiff failed to

7  raise a genuine dispute of material fact as to whether the officers

8  used excessive force in subduing and handcuffing him.  See <u>Luchtel</u>

9  <u>v. Hagemann</u>, 623 F.3d 975, 980–83 (9th Cir. 2010) (granting summary

10 judgment for officers where the plaintiff had actively resisted

11 arrest and the defendants "applied the least amount of force

12 necessary to subdue [the plaintiff] by pinning her to the ground

13 and handcuffing her").  No Fourth Amendment violation occurred;

14 therefore, no further inquiry into qualified immunity is necessary.

15 <u>Saucier</u>, 533 U.S. at 201.  Accordingly, Defendants' Motion for

16 Summary Judgment on Plaintiff's excessive force claim should be

17 **GRANTED**.

18 **B.   Plaintiff's Remaining Deliberate Indifference Claim**

19      Kelly and Dierdorff's Notice of Motion states that Defendants

20 move for summary judgment "as to Plaintiff's Complaint and/or each

21 and every [c]laim for [r]elief;" however, their Memorandum of

22 Points and Authorities is directed only at Plaintiff's excessive

23 force claim and does not address the alleged deliberate

24 indifference claim.  (<u>See</u> Defs.' Mot. Summ. J. 1, ECF No. 28; <u>id.</u>

25 Attach. #1 Mem. P. & A 1-10.)  Because the Defendants have not

26 discussed the deliberate indifference claim in their briefs, the

27 Court does not address this claim in considering the Motion for

28 Summary Judgment.  See <u>Celotex</u>, 477 U.S. at 326 ("[D]istrict courts

1   are widely acknowledged to possess the power to enter summary

2   judgments sua sponte, so long as the losing party was on notice

3   that she had to come forward with all of her evidence."); Cool

4   Fuel, Inc. v. Connett, 685 F.2d 309, 311-12 (9th Cir. 1982)

5   (stating that court may grant summary judgment sua sponte if "party

6   against whom summary judgment was rendered had a full and fair

7   opportunity to ventilate the issues involved in the motion[]").

8   **C.   Dismissing Unserved Defendants Under Rule 4(m)**

9        Rule 4(m) of the Federal Rules of Civil Procedure imposes a

10  time limit for service of the complaint and summons in a civil

11  case.

12       If a defendant is not served within 120 days after the
         complaint is filed, the court--on motion or on its own
13       after notice to the plaintiff--must dismiss the action
         without prejudice against that defendant or order that
14       service be made within a specified time.  But if the
         plaintiff shows good cause for the failure, the court
15       must extend the time for service for an appropriate
         period.

16

17  Fed. R. Civ. P. 4(m); see Efaw v. Williams, 473 F.3d 1038, 1041

18  (9th Cir. 2007).  Whether good cause exists is determined on a

19  case-by-case basis.   In re Sheehan, 253 F.3d 507, 512 (9th Cir.

20  2001).  "At a minimum, 'good cause' means excusable neglect."

21  Boudette v. Barnette, 923 F.2d 754, 756 (9th Cir. 1991).  A

22  plaintiff may show good cause where he attempted to serve a

23  defendant but has not yet completed service, was confused about the

24  requirements for service of process, or was prevented from serving

25  a defendant because of events outside of his control.  See Wei v.

26  State of Hawaii, 763 F.2d 370, 372 (9th Cir. 1985) (applying the

27  good cause standard in Rule 4(j) which was replaced by Rule 4(m) in

28  1993).  "'The 'good cause' provision of Rule 4(j) [now Rule 4(m)]

should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule.'" Despain v. Salt Lake Area Metro Gang Unit, 13 F.3d 1436, 1438 (10th Cir. 1994) (quoting In re City of Philadelphia Litig., 123 F.R.D. 512, 514 n.2 (E.D. Pa. 1988)).

"[A]n incarcerated pro se plaintiff proceeding in forma pauperis is entitled to rely on the U.S. Marshal for service of the summons and complaint, and having provided the necessary information to help effectuate service, plaintiff should not be penalized by having his . . . action dismissed for failure to effectuate service." Puett v. Blandford, 912 F.2d 270, 275 (9th Cir. 1990). "So long as the prisoner has furnished the information necessary to identify the defendant, the marshal's failure to effect service of process is 'automatically good cause within the meaning of Rule [4(m)].'" Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994), overruled on other grounds by Sandin v. Conner, 515 U.S. 472 (1995) (quoting Sellers v. United States, 902 F.2d 598, 603 (7th Cir. 1990)). Nonetheless, a "plaintiff may not remain silent and do nothing to effectuate such service." Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987).

Here, after the Court granted Plaintiff's Motion for Leave to Proceed In Forma Pauperis, the Clerk of the Court issued summons on the original complaint and sent it to Plaintiff along with a blank U.S. Marshal Form 285 for each Defendant [see ECF No. 3]. Wilson filled out the forms with the Defendants' information, and the U.S. Marshal served the original complaint and summons for Defendants Kelly and Dierdorff on November 23, 2011 [see ECF Nos. 6, 7]. Plaintiff subsequently filed his First Amended Complaint naming new

20

Defendants [ECF No. 8], and the Clerk of the Court prepared and mailed a new summons and IFP package to Wilson [see ECF No. 9].  On December 20, 2011, the Court received a change of address form from the Plaintiff [ECF No. 12].  On December 22, 2011, the IFP package was returned as undeliverable [ECF No. 13].  On the same date, the Clerk mailed the package to the new address listed on the docket [ECF No. 13].  The package was sent to the address provided by Plaintiff, and because it was not returned, it was presumably delivered to Wilson.  See Narragansett Indian Tribe, 334 F.3d at 168; Wallace v. Busch Entm't Corp., No. 09-cv-2785-L(RBB), 2013 WL 356859 at *2.

Wilson filed his First Amended Complaint on December 9, 2011 [ECF No. 8].  More than a year has passed since the filing, and proper service still has not been made.  The delay is nearly four times the 120-day period that is presumptively proper for service under Rule 4(m).  Plaintiff has had ample opportunity to provide the U.S. Marshal with addresses to serve Defendants City of San Diego and San Diego Police Department.  He did not seek an extension of time from this Court to serve the First Amended Complaint.  Given Wilson's silence and delay, Plaintiff has not shown good cause for his failure to timely effect service of process on the newly added defendants.  Therefore, his claims

1   against Defendants City of San Diego and San Diego Police

2   Department should be dismissed without prejudice.[3]

3        Plaintiff has consented to this Court's jurisdiction.  (Compl.

4   7, ECF No. 1; First Am. Compl. 7, ECF No. 8.)  "Upon the consent of

5   the parties," a magistrate judge "may conduct any or all

6   proceedings in a jury or nonjury civil matter and order the entry

7   of judgment in the case."  28 U.S.C.A. § 636(c)(1) (West 2006).

8   The Court does not require the consent of Defendants City of San

9   Diego and San Diego Police Department to dismiss an action when

10  they have not been served and are not parties under 28 U.S.C.

11  § 636(c).  See Neals v. Norwood, 59 F.3d 530, 532 (5th Cir. 1995)

12  (holding that magistrate judge had jurisdiction to dismiss prison

13  inmate's § 1983 action as frivolous without consent of defendants

14  because they had not been served and were not parties); see also

15  Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d 1132, 1135

16  (9th Cir. 2009) ("A federal court is without personal jurisdiction

17  over a defendant unless the defendant has been served in accordance

18  with Fed. R. Civ. P. 4.")(internal quotation marks omitted); United

19  States v. Real Property, 135 F.3d 1312, 1317 (9th Cir. 1998)

20  (holding that magistrate judge had jurisdiction to enter default

21  judgment in an in rem forfeiture action even though property owner

22  ───────────────────

23       [3]  The Court also notes that Plaintiff's First Amended
    Complaint fails to state a claim against these defendants.  First,
24  the San Diego Police Department is not a "person" subject to suit
    under § 1983.  Vance v. Cnty. of Santa Clara, 928 F. Supp. 993, 996
25  (N.D. Cal. 1996).  Second, to the extent Plaintiff names the City
    of San Diego based on allegations that individual police officers
26  employed by the city violated his constitutional rights, "a
    municipality cannot be held liable solely because it employs a
27  tortfeasor -- or, in other words, a municipality cannot be held
    liable under § 1983 on a respondeat superior theory."  Monell v.
28  Dep't of Social Servs., 436 U.S. 658, 691 (1978); Gibson v. Cnty.
    of Washoe, 290 F.3d 1175, 1185 (9th Cir. 2002).

had not consented to it because 28 U.S.C. § 636(c)(1) only requires the consent of the "parties" and the property owner, having failed to comply with the applicable filing requirements, was not a "party").

Accordingly, the Court **DISMISSES** Defendants City of San Diego and San Diego Police Department for failure to serve them within the time limits of Rule 4(m).

### IV.   CONCLUSION

For the reasons discussed above, the Court recommends that Defendants Kelly and Dierdorff's Motion for Summary Judgment on Plaintiff's excessive force claim be **GRANTED**, but their Motion for Summary Judgment on the deliberate indifference claim should be **DENIED**.   The Court **DISMISSES** the case against Defendants San Diego Police Department and the City of San Diego without prejudice.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).   Any party may file written objections with the Court and serve a copy on all parties on or before **April 8, 2013.**   The document should be captioned "Objections to Report and Recommendation."   Any reply to the objections shall be served and filed on or before **April 22, 2013**.   The parties are

11cv2296 LAB(RBB)

1  advised that failure to file objections within the specified time

2  may waive the right to appeal the district court's order.  Martinez

3  v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4       **IT IS SO ORDERED.**

5

6  Dated: March 7, 2013

                                        Ruben B. Brooks
7                                       United States Magistrate Judge

8  cc:  Judge Burns
        All Parties of Record

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28